```
                    United States District Court
                      District of Massachusetts
_____
                           )
TIMOTHY DUGUAY,            )
        Petitioner,        )
                           )
        v.                 )    Civil Action No.
                           )    03-11575-NMG
LUIS SPENCER,              )
        Respondent.        )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This habeas petition arises out of a first degree murder conviction returned on November 24, 1997 in Massachusetts Superior Court.

**I.   Background**

Petitioner Timothy Duguay ("Duguay") was convicted of stabbing to death his neighbor, Robert Madera ("Madera"). He is currently serving a life sentence. Duguay has since adamantly pursued relief from that conviction. The Massachusetts Supreme Judicial Court ("the SJC") affirmed the judgment entered against him in December, 1999. Duguay thereafter proceeded pro se. In May, 2000, he filed a motion for a new trial pursuant to Mass. R. Crim. P. 30(b), raising for the first time a claim of ineffective assistance of his trial counsel, Attorney Kevin J. Reddington ("Att'y Reddington"). The state trial judge denied the motion the following month. Duguay appealed, pursuant to Mass. Gen.

Laws ch. 278, § 33E, to a single justice of the SJC in July, 2000.

Before the SJC justice entered a decision, several other motions were filed. In May, 2001, Duguay moved for DNA testing. In June, 2001, he filed a motion to reconsider denial of his prior motion for a new trial in which he raised, for the first time, a claim that appellate counsel was ineffective for not arguing on direct appeal that trial counsel had been ineffective. Both motions were denied in July, 2001. In September of that year, Duguay filed motions to reconsider both adverse decisions which were denied in May and June of 2002. In March, 2003, the single justice of the SJC held a hearing on Duguay's motion for leave to appeal and denied the motion the same day.

Duguay has not confined his quarrel to the judicial branch. In 2002 and 2003, he wrote to an elected official regarding his request for appointment of counsel and successfully obtained a screening by the Massachusetts Committee for Public Counsel Services ("CPCS"). CPCS declined to appoint an attorney, noting that Duguay had already had three post-conviction attorneys although only one is required. In 2005, however, in light of additional forensic analysis commissioned by Duguay, CPCS undertook another screening of his case.

Meanwhile, in August, 2003, Duguay brought an action in federal court by writ of habeas corpus against Respondent Luis

Spencer. On April 2, 2004, the action was stayed at Duguay's request pending the resolution of the CPCS screening and state court proceedings. Petitioner's motion to vacate the judgment was denied by a Single Justice of the SJC in August, 2004. The case was reactivated in October, 2005. In early 2006, this Court denied motions to compel discovery and appoint counsel, as well as subsequent motions to reconsider.

On June 20, 2006, Spencer moved to dismiss the petition. This Court allowed that motion on October 31, 2006 and denied various opposing motions by Duguay. The Court denied Duguay's motion for reconsideration on April 30, 2007. Among its many findings, this Court held that Duguay's claim of ineffective assistance of appellate counsel was not exhausted in state court. Duguay appealed and, in April, 2009, the First Circuit remanded the case to this Court with instructions to consider the merits of the claim of ineffective assistance of counsel ("IAC") with respect to Duguay's trial counsel because the appellate IAC claim depended upon that determination. This Court then directed the parties to submit supplemental memoranda on the issue of appellate counsel's alleged ineffectiveness.

In a Memorandum & Order dated December 3, 2009, this Court denied the appellate IAC claim. Duguay v. Spencer, 677 F. Supp. 2d 344, 347 (D. Mass. 2009). The Court concluded that Duguay's appellate counsel was not ineffective for failing to raise the

trial IAC claim because 1) appellate counsel properly chose to focus the Court's attention on what he believed was the most persuasive appellate argument (insufficiency of the evidence), 2) IAC claims are inherently difficult to prove and may have diverted the Court's attention toward an argument that rarely succeeds and 3) it is unclear under Massachusetts law whether appellate counsel is permitted to raise the trial IAC claim on appeal.  As a result, and contrary to the First Circuit's mandate, the Court declined to analyze the merits of the underlying trial IAC claim.  The Court also denied Duguay's motions for an evidentiary hearing, expansion of the record, issuance of a conditional writ of habeas corpus, DNA testing and production of case documents.

On September 22, 2010, the First Circuit vacated this Court's December 2, 2009 judgment and remanded the case for further proceedings.  The First Circuit found that 1) in light of its recent decision in Pina v. Maloney, federal habeas review of Petitioner's trial IAC claim is not barred by his failure to raise it on appeal and 2) Petitioner's appellate IAC claim is moot.  565 F.3d 48 (1st Cir. 2009).  In Pina, the First Circuit held that an IAC claim is not procedurally defaulted when the Petitioner raises it for the first time in a motion for a new trial and not on direct appeal.  Id. at 53-54.  As a consequence, the First Circuit has directed this Court to decide, on the

merits, Petitioner's IAC claim with respect to his trial counsel. Because the Court's December, 2009 order was vacated, the Court must also reconsider the five motions which the Court denied in connection with that decision.

## II. Petitioner's Trial IAC Claim

### A. Standard for Habeas Corpus Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court will be granted only if the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This case is unusual because the state courts have not made a determination on Petitioner's IAC claim. Thus, at the direction of the First Circuit, this Court is compelled to review Petitioner's claim de novo. Dugas v. Coplan, 428 F.3d 317, 343 (1st Cir. 2005).

### B. Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court articulated a two-pronged test to determine whether the Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. 668, 686-687 (1984). First, the performance of counsel must be

-5-

shown to be deficient such that

> counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

Id. at 687. Second, the petitioner must show that the deficient performance prejudiced the defense such that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and there is

> a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Id. at 687, 695.

This standard is not applied in hindsight but rather should be "based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991). Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. 689. A Court must start with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id.

### C. Grounds Not Raised in Duguay's Petition

In his habeas petition, Duguay lists five reasons why his trial counsel was allegedly ineffective. In both his motion for a new trial in state court, filed in May, 2000, and his opposition to Respondent's motion to dismiss, filed in August, 2006, however, Petitioner stated eight grounds for his IAC claim

which are not included in his habeas petition. In his supplemental memorandum in support of his IAC claims, filed in July, 2009, Petitioner raised seven grounds for relief which are not in his petition. Of those seven, three were completely new and had not previously been presented to any court.

The Court will, therefore, consider only the five grounds raised in Duguay's petition. Habeas Corpus Rule 2(c) instructs petitioners to "specify all grounds for relief" and to "state the facts supporting each ground." Rules Governing Proceedings Under 28 U.S.C. § 2254, Rule 2(c), 28 U.S.C.A. foll. § 2254 (2009). A habeas petitioner may amend his/her petition with leave of the Court if the amendment is not barred by the one-year statute of limitations that applies to habeas petitions. 28 U.S.C. § 2242, 2244(d)(1); see Mayle v. Felix, 545 U.S. 644, 654-55 (2005).

On August 14, 2006, Petitioner moved to amend his petition to add three of those additional grounds. The Court denied that motion on October 31, 2006 because it found that Petitioner's trial IAC claim was unexhausted in state court proceedings. Although the First Circuit remanded the case for an analysis of the merits of the trial IAC claim, it did not vacate the Court's judgment. Thus, Duguay's petition remains unamended.

Petitioner has had ample opportunity to renew that motion to amend his petition and he knows how to do so because he has already done so once. He has not renewed his motion. Thus, the

Court will examine only those grounds that were raised in his petition. In a memorandum filed in August, 2009 which addressed his IAC claim, Duguay stated that he had elected not to argue the first two grounds raised in his petition (regarding Att'y Reddington's decisions with respect to the humane practice and extreme atrocity jury instructions). Thus, in accordance with Petitioner's stated wishes, the Court will treat those two grounds as withdrawn.

**D. Remaining Grounds Raised in the Petition**

**1. Defendant's Right to Testify**

First, Petitioner contends that his trial counsel was ineffective because he did not allow Petitioner to testify on his own behalf at trial. Petitioner asserts that he wanted to testify but that Att'y Reddington did not give him the opportunity. He claims that he discussed it with Att'y Reddington, they had a "definite" plan for Petitioner to testify and he had two polygraph tests done to bolster his testimony. Petitioner argues that his testimony was critical because the prosecution's case was "entirely circumstantial" and there were no eyewitnesses or forensic evidence placing Petitioner in Madera's home at the time of the murder.

A defendant's right to testify in his or her own defense cannot be waived by counsel without the defendant's approval. Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007). Because

defendants are expected to speak only through counsel, a defendant's silence at trial may not be interpreted as a waiver. Id. There must be something in the record suggesting a knowing waiver. See id. The Court is not, however, required to conduct a voir dire to determine whether the defendant knowingly waived his right to testify. Id.

The failure to inform a defendant of his right to testify constitutes deficient (or ineffective) assistance of counsel. Id. at 57-58. Advising a defendant not to testify, however, may be a trial strategy and does not necessarily constitute deficient assistance. See Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987). In Siciliano v. Vose, as here, the petitioner claimed that he had discussed whether he would testify with his attorney and his attorney refused to allow him to testify on his own behalf. The First Circuit opined that the petitioner had been informed of his right to testify and that, for whatever reason, "he chose not to testify as a matter of trial strategy, perhaps at the strong urging of counsel." Id.

The record here leads to the same conclusion. Duguay has not alleged that Att'y Reddington failed to inform him of his right to testify. In fact, Petitioner states that he and Att'y Reddington discussed whether he should testify. The record shows that, at the close of his case, Att'y Reddington informed the trial judge:

> I have spoken to Mr. Duguay extensively about this issue, and for the record, Mr. Duguay is aware that your Honor would either give this instruction of the defendant not testifying or you would not give the instruction, based upon what I ask you to do, and we are specifically asking that the court do (sic) instruct the jury forcefully, as I know you will, that they cannot comment or discuss or have anything to do with discussing the fact that the defendant did not testify[.]

Although Petitioner did not dispute that statement nor assert his right to testify at that time, silence alone is insufficient to establish waiver. The Court finds that here, as in <u>Siciliano</u>, the record indicates that Petitioner, in all likelihood, knowingly waived his right to testify, albeit possibly on advice of counsel. <u>See</u> <u>also</u> <u>Commonwealth</u> v. <u>Waters</u>, 506 N.E. 2d 859, 865 (Mass. 1987) (affirming trial court's finding that the defendant had knowingly waived his right to testify). Nevertheless, in the interest of thoroughness and as explained below, the Court will reserve its determination on this issue until after it receives an affidavit from Att'y Reddington.

### 2. Alibi Witness Testimony

Second, Petitioner contends that his trial counsel was ineffective for failing to present as a witness Petitioner's alibi witness and girlfriend, Tanya Anshewitz ("Tanya"). Petitioner maintains that he told Att'y Reddington that he was home with Tanya on the night of Madera's murder from approximately 7:30 p.m. until the police arrived at 8:30 p.m. and that Att'y Reddington confirmed that with Tanya. Petitioner

alleges that Att'y Reddington planned to have Tanya testify but, instead, did not mention an alibi in his opening statement nor provide the Commonwealth notice of the specifics of his alibi defense as he had agreed to do at the pretrial conference.  Att'y Reddington mentioned in his closing that Duguay had been with Tanya at 8:00 p.m. but he did not, according to Petitioner, sufficiently emphasize that argument.  Petitioner contends that Tanya's testimony was critical to his defense because there were no eyewitnesses to Madera's murder and there was no forensic evidence placing Duguay at the murder scene.  He proclaims that Tanya attended every day of trial and was available and willing to testify.

At trial, Trooper DeBuccia testified about his interview of Duguay on the night of Madera's murder.  Duguay told Trooper DeBuccia that 1) he drove to Madera's home but stayed in the car, came home, went to the basement through the back door without any one seeing him, 2) "moments later", Tanya arrived and asked him "What happened?", 3) Duguay said to Tanya, "I don't know what's going on with me." and 4) "moments" or a "few minutes" later, the police arrived.  On cross-examination, Att'y Reddington elicited testimony that Duguay was in his basement with Tanya when the police arrived.  Trooper DeBuccia also verified from telephone records that Duguay had called Tanya that night and let it ring once as a signal that she should call him.

The failure to investigate properly or to file notice of a possible alibi witness can constitute deficient performance by counsel. See, e.g., Washington v. Smith, 219 F.3d 620, 631-32 (7th Cir. 2000); Brown v. Myers, 137 F.3d 1154, 1156-57 (9th Cir. 1998). The absence of alibi testimony is prejudicial where "[t]he missing testimony of the alibi witnesses would have altered significantly the evidentiary posture of the case." Brown, 137 F.3d at 1157.

On the other hand, a strategic decision not to call a witness, after the attorney has done a thorough investigation is "virtually unchallengeable". Stewart v. Wolfenbarger, 468 F.3d 338, 355-56 (6th Cir. 2006). In order for a strategic decision not to call a witness to constitute deficient performance of counsel, that strategic choice must have been "manifestly unreasonable when made." Commonwealth v. Britto, 744 N.E. 2d 1089, 1098 (Mass. 2001). Where testimony would be cumulative of other testimony already presented, counsel's decision not to call a witness is not unreasonable. Id.

In analyzing an IAC claim, the Court must afford strong deference to an attorney's strategic decisions and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. Here, unlike in the cases cited by Petitioner, he does not allege that Att'y Reddington's failure to investigate or

file notice of Tanya as an alibi witness prevented her from testifying. Instead, Petitioner maintains that Att'y Reddington elected not to call her. It is unclear whether Tanya's testimony would have been helpful or harmful to the defendant. For example, she might have corroborated Trooper DeBuccia's testimony by stating that she arrived only moments before the police did. Moreover, her testimony might have been somewhat cumulative because Trooper DeBuccia testified that Tanya was with Duguay when the police arrived. For those reasons, the Court concludes that Att'y Reddington's decision not to call Tanya was strategic. Nevertheless, as explained below, the Court again will reserve its determination pending receipt of an affidavit from Att'y Reddington.

### 3. **Polygraph Evidence**

Finally, Petitioner contends that Att'y Reddington was ineffective because he failed to establish a proper foundation for admission of the results of two polygraph tests that Duguay apparently passed. Petitioner argues that an additional expert, Dr. Stan Abrams, would have bolstered his expert's testimony and should have been called.

Counsel can be deemed ineffective for failing to lay a proper foundation for relevant evidence, resulting in its exclusion. See Stouffer v. Reynolds, 214 F.3d 1231, 1235 (10th Cir. 2000) (finding that counsel was ineffective due to a number

of omissions and failures, including counsels' failure to lay a proper foundation for relevant evidence). In Massachusetts, however, polygraph evidence is generally inadmissible unless the reliability of the theory underlying polygraph testing is

> established by proof in a given case that a qualified tester who conducted the test had in similar circumstances demonstrated, in a statistically valid number of independently verified and controlled tests, the high level of accuracy of the conclusions that the tester reached in those tests.

Commonwealth v. Stewart, 663 N.E. 2d 255, 259 (Mass. 1996); Commonwealth v. Mendes, 547 N.E. 2d 35, 41 (Mass. 1989).

At trial, Petitioner's expert witness, Richard C. Johnson, testified that he had conducted over 5,000 polygraph examinations and that he was qualified as a polygraph expert in a large number of courts. He described the field of polygraph science and how the examinations are administered and analyzed. He did not, however, provide any statistical evidence of the reliability of polygraph examinations nor address the level of accuracy of his prior examinations. Without such testimony, the trial judge must exclude the polygraph evidence. Stewart, 663 N.E. 2d at 259. As such, the trial judge held that Att'y Reddington had not met the requirement described in Stewart.

With respect to Dr. Abrams testimony, Petitioner produced with his motion for a new trial only two unsworn letters setting forth Dr. Abrams' background in polygraph examinations. Without verification of the nature and content of Dr. Abrams' testimony,

there is no evidence or even allegation before the Court indicating that Dr. Abrams' testimony would have been any different than Mr. Johnson's. For that reason, the Court finds that Petitioner has failed to make the required showing for an IAC claim on this ground. See Strickland, 466 U.S. at 686-689. An evidentiary hearing on this issue is unwarranted for the reasons explained below.

**III. <u>Additional Pending Motions</u>**

**A.   Motion for an Evidentiary Hearing**

As explained above, the Court needs to examine only three alleged grounds for IAC here: counsel's failure to call as witnesses the defendant himself, Tanya and Dr. Abrams. Petitioner seeks to develop the content of that evidence in an evidentiary hearing.

A habeas petitioner who did not receive an evidentiary hearing in state court may be entitled to an evidentiary hearing in federal court. Barkell v. Crouse, 468 F.3d 684, 693 (10th Cir. 2010). If the applicant has failed to develop the factual basis of a claim in state court proceedings, however, the court "shall not hold an evidentiary hearing on the claim unless" the applicant has shown that:

> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). There are circumstances under which an evidentiary hearing is necessary in order to provide an adequate record upon which to assess an IAC claim in a § 2254 action. See, e.g., Barkell v. Crouse, 468 F.3d 684 (10th Cir. 2006); Dugas v. Coplan, 428 F.3d 317, 342-43 (1st Cir. 2005); Davis v. Lambert, 388 F.3d 1052, 1064-65 (7th Cir. 2004); Stouffer, 168 F.3d at 1168.

Although Petitioner does not argue that any new rule of constitutional law applies here, the Court finds that Petitioner has alleged specific and particularized facts, which, if proved, would entitle him to relief. Thus, the issue before the Court is whether Petitioner's IAC claim relies on any facts that he could not have "previously discovered through the exercise of due diligence".

With respect to the polygraph expert, Dr. Stan Abrams, Petitioner raised that issue in state court when he moved for a new trial in May, 2000. At that time, he was denied an evidentiary hearing but, nonetheless, has had plenty of time to obtain an affidavit from Dr. Abrams since then. Thus, the Court finds that Petitioner did not exercise due diligence in obtaining

an affidavit from Dr. Abrams and declines to schedule an evidentiary hearing with respect to that issue.  The same is true with respect to Tanya Anshewitz, not to mention the inopportune fact that she is deceased.  Finally, there is no need to develop the content of Duguay's own testimony about which he has already informed the Court.

Duguay also seeks to have Att'y Reddington examined at an evidentiary hearing to determine his reasons for not presenting the subject witnesses.  Without any explanation from Petitioner, it is unclear why he never obtained an affidavit from Att'y Reddington when he moved for a new trial.  It is also puzzling that Respondent has never moved to require the production of such an affidavit.  In any event, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Petitioner has waived the attorney-client privilege to the extent that communications between him and Att'y Reddington would be necessary to prove or disprove his claim.  Greater Newburyport Clamshell Alliance v. Pub. Serv. Co., 838 F.2d 13, 19 (1st Cir. 1988).

This Court has the discretion to order a full evidentiary hearing or to limit the fact-finding to an affidavit from Petitioner's trial counsel.  See United States v. Laguerre, 70 Fed. Appx. 606, 608 (2d Cir. 2003).  A full evidentiary hearing is unnecessary here because the only person the Court needs to hear from is Att'y Reddington.  In his motion for an evidentiary

hearing, Petitioner does not mention any other person specifically. The Court may require attorneys to provide affidavits or other information related to their prior representation when the effectiveness of that representation is at issue. See, e.g., United States v. Pinson, 584 F.3d 972, 979 (10th Cir. 2009); Clock v. United States, No. 09-CV-379-JD, 2010 WL 890445, at *1-2 (D.N.H. Mar. 8, 2010). The Court must be specific as to what it requires the attorney to disclose. Pinson, 584 F.3d at 979. Thus, in lieu of an evidentiary hearing, the Court will direct Att'y Reddington to submit an affidavit which addresses only the reasons that the defendant and Tanya were not called to testify.

  **B. Motion for Expansion of the Record**

Petitioner moves to expand the record with a packet of supplemental exhibits and Respondent opposes that motion. In the interest of affording Petitioner the opportunity to argue his case and present relevant materials which he has already obtained in support of his habeas petition, the Court will allow the motion to expand the record but it will consider those exhibits only with respect to the claims of IAC that Duguay raised in his petition.

  **C. Motion for a Conditional Writ of Habeas Corpus**

Petitioner moves for a conditional writ of habeas corpus pursuant to 28 U.S.C. § 2254. A conditional writ is an order by

a federal court that the state release the habeas petitioner unless it retries him within a specified time period. Hilton v. Braunskill, 481 U.S. 770, 782-83 (1987). Petitioner seeks an order that he be released or retried within 120 days. Because Petitioner has given no reason for allowing this motion other than the grounds set forth in his habeas petition, the merits of which the Court will soon adjudicate, this motion will be denied.

**D.   Renewed Motion for DNA Testing**

Because the Court addresses only those claims for IAC that are set forth in Duguay's petition and the alleged failure to request DNA testing is not one of them, the Court finds that DNA testing is irrelevant to Duguay's IAC claim as stated in his petition.

**E.   Renewed Motion for Production of Documents**

This Court denied Petitioner's original motion for production of documents in its June 20, 2006 Memorandum & Order. Because Petitioner simply resubmits that motion without change, the Court will deny it once again for the same reasons set forth in its June, 2006 Memorandum & Order.

**ORDER**

In accordance with the foregoing,

1) Duguay's motion for expansion of the record (Docket No. 132) is **ALLOWED;**

2) Duguay's motions for an evidentiary hearing (Docket No. 130), a conditional writ of habeas corpus (Docket No. 134), DNA testing (Docket No. 135) and production of case documents (Docket No. 136) are all **DENIED;** and

3) Attorney Kevin J. Reddington, Duguay's trial counsel, is directed to provide, on or before March 31, 2011, to Clerk of Court an affidavit addressing only his decisions as trial counsel not to offer testimony of the Petitioner or Ms. Tanya Anshewitz.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 22, 2011